## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES** | ) |
| | ) |
| **v.** | ) |
| | ) **No. 20-cr-10170-DJC** |
| **MICHAEL SEBASTIAN,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                    **February 23, 2023**

## I.      Introduction

Defendant Michael Sebastian ("Sebastian") has moved to dismiss the indictment against him, charging him with three counts of engaging in illicit sexual conduct in foreign places with three minors in violation of 18 U.S.C. § 2423(c) and (e) (Counts I–III) and three counts of sex trafficking of children in violation of 18 U.S.C. § 1591(a)(1), (b)(2), and (c) and § 1596(a)(1) and (2) (Counts IV–VI).  D. 23.  Having considered the motion, D. 90, the government's opposition, D. 95, and Sebastian's reply, D. 109, the Court DENIES the motion.

## II.     Standard of Review

If an indictment "describes all of the elements of the charged offense using the words of the relevant criminal statute," it is  usually sufficient for purposes of surviving a motion to dismiss. United States v. Wells, 766 F.2d 12, 22 (1st Cir. 1985) (citing cases).  Defendants wishing to challenge the sufficiency of an indictment shoulder a heavy burden.  United States v. McPhail, No. 14-10201-DJC, 2015 WL 2226249, at *2 (D. Mass. May 12, 2015).    This is because the Court

"should exercise its authority to dismiss cautiously, since to dismiss an indictment 'directly encroaches upon the fundamental role of the grand jury.'" <u>Unites States v. Thomas</u>, 519 F. Supp. 2d 141, 143–44 (D. Me. 2007) (quoting <u>Whitehouse v. U.S. Dist. Ct.</u>, 53 F.3d 1349, 1360 (1st Cir. 1995)).  An indictment need only "apprise the defendant of the charged offense," not force "the government [to] present[] enough evidence to support the charge." <u>United States v. Ngige</u>, 780 F.3d 497, 502 (1st Cir. 2015) (internal citation and quotation marks omitted).

## III.   Factual and Statutory Background

The following allegations are drawn from the affidavit filed in support of the criminal complaint.  D. 1-1.

Sebastian is a United States citizen, who at the time of the alleged offenses was an English teacher in Luang Prabang, Laos.  <u>Id.</u> ¶¶ 5, 9, 20, 33.  While teaching children there, Sebastian allowed students to live with him.  <u>Id.</u> ¶ 7.  Students who could not afford the rent ("dues") were required to perform chores and jobs around the house to earn credit towards their dues.  <u>Id.</u> ¶¶ 7, 10, 21, 33.  These chores and jobs included giving Sebastian massages, during which he would be naked.  <u>Id.</u> ¶¶ 7, 12–13, 22, 24, 34.  At times, Sebastian required his students to masturbate him during these massages.  <u>Id.</u> ¶¶ 7, 13, 15, 24, 27, 34.  The students were also required to email Sebastian the date, time, length, and nature of the chores and jobs they performed, to keep track of how much of their dues were worked off.  <u>Id.</u> ¶¶ 16–19, 29–32, 35–39.  Sebastian's alleged misconduct with his students was reported to United States authorities in July 2019.  <u>Id.</u> ¶ 5.  Three victims were identified:  Minor A, who began living with Sebastian at age thirteen; Minor B, who began living with Sebastian at age fifteen; and Minor C, who began living with Sebastian at age sixteen.  <u>Id.</u> ¶¶ 8–10, 20, 33.

Throughout the years Sebastian taught in Laos, he traveled between Southeast Asia and the United States almost every year.  Id. ¶ 46.  His last flight to the United States was in March 2020. Id.  After his arrival in March 2020, Sebastian lived with his mother at her residence in Lynn, Massachusetts until he was charged in the instant matter on July 7, 2020.  D. 1; D. 1-1 ¶ 50.

A grand jury returned the indictment on August 27, 2020.  D. 23.  Counts I–III of the indictment charge Sebastian with three counts of engaging in illicit sexual conduct in foreign places, in violation of 18 U.S.C. § 2423(c) and (e), regarding each minor respectively.  Id. at 1–3. Counts IV–VI charge Sebastian with three counts of sex trafficking of children, in violation of 18 U.S.C. § 1591(a)(1), (b)(2), and (c) and § 1596(a)(1) and (2), regarding each minor respectively. Id. at 4–6.  Count Four additionally charges Sebastian with a violation of 18 U.S.C. § 1591(b)(1), regarding Minor A, as the victim was under fourteen years of age at the time of the alleged crime. Id. at 4.  All six counts include a charge of 18 U.S.C. § 3238, which concerns venue and offenses not committed in any district.  Id. at 1–6.

With respect to Counts I–III, the relevant statutory provisions require as follows:

> **(c) Engaging in Illicit Sexual Conduct in Foreign Places.—** Any United States citizen . . . who travels in foreign commerce or resides, either temporarily or permanently, in a foreign country, and engages in any illicit sexual conduct with another person shall be fined under this title or imprisoned not more than 30 years, or both.

18 U.S.C. § 2423(c).

> **(e) Attempt and Conspiracy.—** Whoever attempts or conspires to violate subsection . . . (c) . . . shall be punishable in the same manner as a completed violation of that subsection.

Id. § 2423(e).  Finally, "illicit sexual conduct" is defined under this section as:

> **(1)** a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States;

**(2)** any commercial sex act (as defined in section 1591) with a person under 18 years of age; or

**(3)** production of child pornography (as defined in section 2256(8)).

Id. § 2423(f)(1)–(3).

With respect to Counts IV–VI, the relevant statutory provisions require as follows:

**(a)** Whoever knowingly—

> **(1)** in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; . . .
>
>> knowing, or, . . . in reckless disregard of the fact, . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

**(b)** The punishment for an offense under subsection (a) is—

> **(1)** . . . if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or
>
> **(2)** if . . . the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

**(c)** In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the [g]overnment need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

Id. § 1591(a)–(c).  Here, the term "commercial sex act" is defined as "any sex act, on account of which anything of value is given to or received by any person."  Id. § 1591(e)(3).  Lastly, concerning jurisdiction for these counts, Chapter 18 of the United States Code states:

**(a) In General.—** In addition to any domestic or extra-territorial jurisdiction otherwise provided by law, the courts of the United States have extra-territorial jurisdiction over any offense (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591 if—

> **(1)** an alleged offender is a national of the United States or an alien lawfully admitted for permanent residence (as those terms are defined in section 101 of the Immigration and Nationality Act (8 U.S.C. 1101)); or

4

**(2)** an alleged offender is present in the United States, irrespective of the nationality of the alleged offender.

Id. § 1596(a)(1)–(2).

## IV.    Procedural History

Sebastian has moved to dismiss the indictment.  D. 90.  The Court heard the parties on the motion, D. 102, and took the matter under advisement.

## V.    Discussion

Sebastian argues that dismissal of the indictment is warranted for three reasons:  (1) the charges under § 2423 (Counts I–III) are multiplicitous of the charges under § 1591 (Counts IV–VI); (2) neither the Foreign Commerce Clause nor the Necessary and Proper Clause give Congress the authority to reach the alleged conduct here, which occurred entirely within Laos; and (3) to the extent the government intends to prove that Sebastian engaged the alleged victims in a "commercial sex act," that term does not encompass his alleged actions as a matter of law, and in the alternative, the statutory definition is void for vagueness.  D. 90 at 1, 14.

### A.    **Multiplicity**

As an initial matter, Sebastian challenges the government's decision to charge him with violations of both 18 U.S.C. § 2423(c) and § 1591(a)(1).  These counts, he contends, are multiplicitous of each other, because "[t]he two groups of counts allege identical factual conduct, and neither statutory provision contains an element that the other does not."  D. 90 at 6.

The Double Jeopardy Clause states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  In other words, the Double Jeopardy Clause "protects against multiple punishments for the same offense."  United States v. Chiaradio, 684 F.3d 265, 272 (1st Cir. 2012) (citation and internal quotation marks omitted).  "A prosecution is multiplicitous when the government charges a defendant twice for what is

essentially a single crime." Id. (citation omitted).  To determine whether a given indictment runs

afoul of the Double Jeopardy Clause, courts look to Blockburger v. United States, 284 U.S. 299

(1932).  There, the Supreme Court explained that "where the same act or transaction constitutes a

violation of two distinct statutory provisions, the test to be applied to determine whether there are

two offenses or only one, is whether each provision requires proof of a fact which the other does

not." Id. at 304.  This "same-elements" test "inquires whether each offense contains an element

not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional

punishment and successive prosecution." United States v. Dixon, 509 U.S. 688, 696 (1993).[1]

Applying this test here, the Court concludes that there is no double jeopardy violation.  An

examination of the elements of the charged crimes illustrate that they are not multiplicitous.  To

convict Sebastian of a violation of 18 U.S.C. § 2423(c) (Counts I–III), the government must prove

that he (1) is a United State citizen; (2) "travel[ed] in foreign commerce or reside[d], either

temporarily or permanently, in a foreign country;" and (3) while traveling in foreign commerce or

residing in a foreign country, "engage[d] in any illicit sexual conduct" with the three minors.  18

U.S.C. § 2423(c); see Eleventh Cir. Pattern Jury Instructions, Crim. Cases O93.3 (Mar. 10, 2022),

https://www.ca11.uscourts.gov/sites/default/files/

courtdocs/clk/FormCriminalPatternJuryInstructionsRevisedMAR2022.pdf (last visited Feb. 21,

2023); Manual of Model Crim. Jury Instructions for the Dist. Cts. of the Ninth Cir. 20.31 (2022),

https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Criminal_Instructions_20

---

[1] The Blockburger test applies only where legislative "intent [is] not . . . apparent." United
States v. Patel, 370 F.3d 108, 114 (1st Cir. 2004).  Sebastian, however, has not presented any
evidence of congressional intent contradicting the statutory language.  See United States v. Brooks,
610 F.3d 1186, 1195 n.2 (9th Cir. 2010) (conducting a Blockburger analysis where the defendant
"failed to present a showing of congressional intent contradicting the statutory language" (citation
and internal quotation marks omitted)).

22_9.pdf (last visited Feb. 21, 2023); Crim. Jury Instructions for the Seventh Cir. at 1007 (2022), https://www.ca7.uscourts.gov/pattern-jury-instructions/Bauer_pattern_criminal_jury_instructions_2022updates.pdf (last visited Feb. 21, 2023).  Furthermore, the "illicit sexual conduct" must satisfy one of the enumerated definitions in 18 U.S.C. § 2423(f).  As the government intends to rely on the definition enumerated at 18 U.S.C. § 2423(f)(2), D. 95 at 6–7, it must also prove that Sebastian committed "any commercial sex act (as defined in section 1591) with a person under 18 years of age," 18 U.S.C. § 2423(f)(2).  To prove Sebastian committed a "commercial sex act" as defined in section 1591, the government must prove that he engaged in "any sex act, on account of which anything of value is given to or received by any person."  Id. § 1591(e)(3).

On the other hand, to convict Sebastian of a violation of 18 U.S.C. § 1591(a)(1) (Counts IV–VI), the government must prove that (1) his acts were "in or affecting interstate or foreign commerce;" (2) he "knowingly . . . recruit[ed], entice[d], harbor[ed], transport[ed], provide[d], obtain[ed], advertise[d], maintain[ed], patronize[d], or solicit[ed] by any means" the three minors; and (3) he did so "knowing, or, . . . in reckless disregard of the fact, . . . that the [person had] not attained the age of 18 years and w[ould] be caused to engage in a commercial sex act."  Id. § 1591(a)(1), (c); see Eleventh Cir. Pattern Jury Instructions, Crim. Cases O63; Manual of Model Crim. Jury Instructions for the Dist. Cts. of the Ninth Cir. 20.25; Manual of Model Crim. Jury Instructions for the Dist. Cts. of the Eighth Cir. 6.18.1591 (2021), https://www.ca8.uscourts.gov/sites/ca8/files/2021%20Edition-Criminal%20Jury%20Instructions.pdf (last visited Feb. 21, 2023); Crim. Jury Instructions for the Seventh Cir. at 761; Sixth Cir. Pattern Crim. Jury Instructions 16.12 (2021), https://www.ca6.uscourts.gov/sites/ca6/files/pattern_criminal_jury_full-22.pdf (last visited Feb. 21, 2023); Fifth Cir. Pattern Jury Instructions (Crim. Cases) 2.68 (2019), https://www.

lb5.uscourts.gov/juryinstructions/Fifth/crim2019.pdf (last visited Feb. 21, 2023).  Lastly, the government must prove that Sebastian's alleged actions constitute a "commercial sex act," which is defined as "any sex act, on account of which anything of value is given to or received by any person."  18 U.S.C. § 1591(e)(3).

Comparing the elements of these two statutory provisions, the Court highlights that each provision contains an element not contained in the other.  For example, 18 U.S.C. § 2423(c) requires proof of Sebastian's United States citizenship, whereas § 1591(a)(1) imposes no such requirement.  See id. § 1596(a)(1) (requiring that the alleged offender be either a national of the United States or a noncitizen lawfully admitted for permanent residence).  Section 2423(c) requires proof that Sebastian traveled to or resided in Laos, whereas § 1591(a)(1) does not.  Most notably, 18 U.S.C. § 1591(a)(1) requires proof that Sebastian "knowingly . . . recruit[ed], entice[d], harbor[ed], transport[ed], provide[d], obtain[ed], advertise[d], maintain[ed], patronize[d], or solicit[ed] by any means" the three minors, whereas § 2423(c) does not.  Further, 18 U.S.C. § 1591(a)(1) requires that Sebastian have acted with knowledge or in reckless disregard of the minor's ages and knowledge that they would be caused to engage in a commercial sex act, whereas § 2423(c) does not.  See id. § 1591(a)(1), (c) (allowing "[i]n a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person . . . [that] the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years").  Sebastian argues that these statutory elements "are the same in sum and substance," D. 90 at 7, but the delineating each of these elements, as the Court has done above, illustrates the differences in the requisite elements of each crime.  Id.

In addition to the specific statutory language and model jury instructions cited above, the Court's conclusion is further supported by other decisions addressing multiplicity challenges to 18

U.S.C. § 1591(a)(1) and similar offenses.  In reaching their respective decisions, these courts highlighted the requisite elements of a crime charged under 18 U.S.C. § 1591(a)(1), which comport with this Court's decision.  See, e.g., United States v. Townsend, 521 F. App'x 904, 908–09 (11th Cir. 2013) (rejecting multiplicity challenge to 18 U.S.C. § 1591(a) and § 2421(a) and distinguishing that § 1591(a) requires that the defendant know or recklessly disregard that person "will be caused to engage in commercial sex" which was not an element of the other crime); Brooks, 610 F.3d at 1195 (rejecting multiplicity challenge to 18 U.S.C. § 1591(a) and § 2423(a) and noting that section "1591(a) plainly requires proof that the defendant knew that the victim was under the age of eighteen years at the time of the crime" and "requires that the defendant *knew* that the victim would engage in a commercial sex act" (italics in original)).

In response, Sebastian relies upon two cases, Brown v. Ohio, 432 U.S. 161 (1977) and United States v. DeCarlo, 434 F.3d 447 (6th Cir. 2006).  In both cases, the courts concluded that one charge was a lesser-included offense of a second charge, because the second charge only required proof of one additional element.  Brown, 432 U.S. at 167–68 (concluding that joyriding is a lesser-included offense of auto theft, because "the prosecutor who has established joyriding need only prove the requisite intent in order to establish auto theft; the prosecutor who has established auto theft necessarily has established joyriding as well"); DeCarlo, 434 F.3d at 456 (explaining that "[t]he two charges -- interstate travel with intent to have sex with a person under twelve and interstate travel with intent to have illicit sex with a person under eighteen -- did not render the indictment defective.  Under the circumstances of this case, one crime was a lesser offense included in the other: an intent to commit an illegal sex act with a person under eighteen includes the intent to commit that act with a victim under twelve").  This makes both cases

inapposite, because, as discussed above, each charge here requires proof of a fact which the other does not.

For all of these reasons, 18 U.S.C. § 2423(c) and § 1591(a)(1) are not multiplicitous of each other and, therefore, the indictment does not implicate double jeopardy concerns and Sebastian's motion to dismiss is denied on this ground.[2]

**B.      Foreign Commerce Clause**

Sebastian also contends that the Foreign Commerce Clause does not grant Congress the authority to regulate the alleged conduct here through either 18 U.S.C. § 2423(c) or § 1591(a)(1). D. 90 at 10–16.   In other words, as Congress can only rely upon its enumerated powers in the Constitution to enact legislation, United States v. Volungus, 595 F.3d 1, 4 (1st Cir. 2010) (citations omitted), Sebastian argues that Congress has no authority to criminalize his alleged conduct because the Foreign Commerce Clause does not supply that authority.

*1.      Foreign Commerce Clause Framework*

The Constitution provides that "Congress shall have Power . . . [t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."  U.S. Const. art. I, § 8, cl. 3.   This provision's three parts are the Foreign Commerce Clause, the Interstate Commerce Clause, and the Indian Commerce Clause.   While the bounds of the Interstate Commerce Clause have been well-explored by the Supreme Court and the lower courts, "[t]he Foreign Commerce Clause is a 'complex and largely undeveloped area of constitutional law' in which the Supreme Court's 'only iterations . . . have come in situations involving state taxation of foreign commerce.'"   Hartford Enters., Inc. v. Coty, 529 F. Supp. 2d 95, 105 (D. Me. 2008)

---

[2] Sebastian's additional argument regarding his possible sentencing exposure with both sets of charges, D. 109 at 1–2, does not warrant a different conclusion, especially where the Blockburger test is satisfied.

(quoting Antilles Cement Corp. v. Acevedo Vila, 408 F.3d 41, 46–47 (1st Cir. 2005)).  The First Circuit's exploration of this clause is limited, see Fortuño, 670 F.3d at 327; Nat'l Foreign Trade Council v. Natsios, 181 F.3d 38 (1st Cir. 1999); McBee v. Delica Co., 417 F.3d 107 (1st Cir. 2005), and so it appears it has  not yet analyzed whether and to what extent, if any, the Foreign Commerce Clause authorizes Congress to legislate and criminalize actions like those at issue here.

The Supreme Court's guidance, however, explains that the Foreign Commerce Clause grants Congress at least equally as broad authority as that granted under the Indian Commerce Clause, Buttfield v. Stranahan, 192 U.S. 470, 493 (1904), which confers Congress "plenary and exclusive" authority to regulate in the field of Indian affairs, United States v. Lara, 541 U.S. 193, 200 (2004) (citations and internal quotation marks omitted).  Furthermore, the Supreme Court has suggested that "Congress' power to regulate foreign commerce" is not "limited" by "considerations of federalism and state sovereignty," which are present in cases involving interstate commerce.  See Japan Line, Ltd. v. Cnty. of Los Angeles, 441 U.S. 434, 448 n.13 (1979). Finally, Supreme Court dicta indicates that "there is evidence that the Founders intended the scope of the foreign commerce power to be [] greater" than its interstate commerce power, id. at 448, and that Congress's authority "when exercised in respect of foreign commerce may be broader than when exercised as to interstate commerce," Atl. Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 434 (1932).[3]

---

[3] At least one Supreme Court Justice has suggested that "[n]one of these opinions, however, involve[d] legislation of extraterritorial operation which purports to regulate conduct inside foreign nations.  . . .  This Court's statements about the comparative breadth of the Foreign Commerce Clause are of questionable relevance where the issue is Congress' power to regulate, or even criminalize, conduct within another nation's sovereign territory."  Baston v. United States, ___ U.S. __, 137 S. Ct. 850, 852 (2017) (Thomas, J., dissenting) (second alteration in original) (internal citation and quotation marks omitted).

Also helpful on this score are several appellate court decisions addressing Foreign Commerce Clause challenges to 18 U.S.C. § 2423(c) and § 1591(a)(1).  See, e.g., United States v. Park, 938 F.3d 354, 370–74 (D.C. Cir. 2019); United States v. Lindsay, 931 F.3d 852, 860–63 (9th Cir. 2019); United States v. Durham, 902 F.3d 1180, 1192–1217 (10th Cir. 2018); United States v. Baston, 818 F.3d 651, 666–669 (11th Cir. 2016); United States v. Bollinger, 798 F.3d 201, 208–19 (4th Cir. 2015); United States v. Al-Maliki, 787 F.3d 784, 790–94 (6th Cir. 2015); United States v. Pendleton, 658 F.3d 299, 305–11 (3d Cir. 2011); United States v. Bianchi, 386 F. App'x 156, 160–62 (3d Cir. 2010); United States v. Clark, 435 F.3d 1100, 1110–17 (9th Cir. 2006).  To analyze such challenges, most of these courts relied upon the Interstate Commerce Clause framework announced in United States v. Lopez, 514 U.S. 549 (1995).  See, e.g., Park, 938 F.3d at 371; Durham, 902 F.3d at 1206; Bollinger, 798 F.3d at 215; Al-Maliki, 787 F.3d at 792; Pendleton, 658 F.3d at 308.  Some of these courts have only used the Lopez framework as a starting point, recognizing that Congress's authority over foreign commerce is broader than over domestic commerce.  See, e.g., Durham, 902 F.3d at 1209; Bollinger, 798 F.3d at 215.  Lastly, the Ninth Circuit proposed a "global, commonsense approach," which considers "whether the statute bears a rational relationship to Congress's authority under the Foreign Commerce Clause."  Clark, 435 F.3d at 1103, 1114; see Lindsay, 931 F.3d at 861–62 (discussing Clark); Bianchi, 386 F. App'x at 161–62 (relying upon the Ninth Circuit's analysis in Clark).

Sebastian's arguments track the narrower and traditional application of the Lopez framework.  D. 90 at 10–14.  For its part, the government notes that Congress's authority to enact both 18 U.S.C. § 2423(c) and § 1591(a)(1) "is valid under any version of the test."  D. 95 at 13.  Accordingly, the Court will apply the traditional Lopez framework to the case at bar.

12

Under the Interstate Commerce Clause, Congress can regulate activity that falls within one of the following categories:  the channels of commerce; the instrumentalities of commerce; or "those activities that substantially affect interstate commerce." Lopez, 514 U.S. at 558–59.  As to the final category, the Interstate Commerce Clause empowers Congress to regulate "economic class[es] of activities"—even those that are "purely local"—if Congress had a "rational basis" for concluding that those activities "taken in the aggregate, substantially effect interstate commerce." Gonzalez v. Raich, 545 U.S. 1, 22 (2005) (citations and internal quotation marks omitted). Additionally, under this category, Congress may "regulate purely intrastate activity that is not itself 'commercial,' in that it is not produced for sale, if it concludes that failure to regulate that class of activity would undercut the regulation of the interstate market in that commodity." Id. at 18.  In making this inquiry, four factors are relevant:

> (1) whether the statute regulates economic or commercial activity; (2) whether the statute contains an "express jurisdictional element" that limits the reach of its provisions; (3) whether Congress made findings regarding the regulated activity's impact on interstate commerce; and (4) whether "the link between [the regulated activity] and a substantial effect on interstate commerce was attenuated."

United States v. Morales-de Jesús, 372 F.3d 6, 10 (1st Cir. 2004) (alteration in original) (quoting United States v. Morrison, 529 U.S. 598, 610–12 (2000)).

### 2.    Constitutionality of Counts I–III

As previously mentioned, the government charges Sebastian with three counts of violating 18 U.S.C. § 2423(c), which makes it criminal for "[a]ny United States citizen" to "travel[] in foreign commerce or reside[], either temporarily or permanently, in a foreign country, and engage[] in any illicit sexual conduct with another person."  18 U.S.C. § 2423(c).  As applicable to the case at bar, "illicit sexual conduct" is defined as "any sex act, on account of which anything of value is given to or received by any person" under the age of eighteen.  Id. § 2423(f)(2); id. §

13

1591(e)(3).  Accordingly, the Court must determine whether Congress has the authority under the Foreign Commerce Clause to criminalize Sebastian's alleged conduct of traveling to, and residing in Laos, and providing his minor students credit towards their rent in exchange for masturbating him.

Section 2423(c), as applied to Sebastian's alleged conduct, satisfies each of the four Morrison factors, and thus Congress had a rational basis for concluding that those economic activities, taken in the aggregate, substantially effect foreign commerce.  The first factor weighs in favor of constitutionality because, as applied here, 18 U.S.C. § 2423(c) and (f)(2) criminalize "commercial sex acts" and, therefore, regulate economic activity.  See Clark, 435 F.3d at 1115 (explaining that "[t]he statute expressly includes an economic component by defining 'illicit sexual conduct,' in pertinent part, as 'any commercial sex act . . . with a person under 18 years of age'" (internal citation omitted)); United States v. Reed, No. 15-188 (APM), 2017 U.S. Dist. LEXIS 118020, at *33 (D.D.C. July 27, 2017) (explaining that "[t]here can be no doubt that Section 2423(c), when coupled with the 'commercial sex acts' definition contained in subsection (f)(2), regulates an economic activity").  While Sebastian argues that his alleged conduct is "more aptly considered non-economic, violent criminal conduct," D. 90 at 13–14, the Court does not agree. Trading rental credits and shelter for various forms of sexual gratification is economic or commercial in nature because it involves the transfer of something unquestionably of value—namely, shelter—to the victim.

The second Morrison factor, an express jurisdictional element, is also present here. Congress only sought to criminalize illicit sexual conduct after a would-be defendant "travel[ed] in foreign commerce or reside[d], either temporarily or permanently, in a foreign country."  Id. § 2423(c); see Reed, 2017 U.S. Dist. LEXIS 118020, at *34 (explaining that "Section 2423(c)

14

contains an express jurisdictional element" because Congress "explicitly link[ed] th[e] [criminal] conduct to international commerce by making 'travel[] in foreign commerce' an element of the offense" (citation omitted)); United States v. Flath, No. 11-cr-69, 2011 WL 6299941, at *7 (E.D. Wis. Sept. 14, 2011), *report and recommendations adopted on other grounds*, 845 F. Supp. 2d 951 (E.D. Wis. 2012) (explaining that "Section 2423(c) contains an express jurisdictional element").

Turning to the third Morrison factor, numerous courts have summarized Congress's factual findings regarding the legislation and stated that "[i]n connection with passing the legislation subsequently codified at Section 2423(c), Congress made factual findings that there exists a global marketplace for sexual exploitation of children, in which children are trafficked across borders for the purpose of prostitution, pornography production, and other forms of sexual abuse, and in which Americans are participating as customers." Reed, 2017 U.S. Dist. LEXIS 118020, at *33–34 (citing, *inter alia*, H.R. REP. NO. 108-66, at 51–52 (2003) (Conf. Rep.), and H.R. REP. NO. 107-525, at 2–3 (2002)); see, e.g., Park, 938 F.3d at 359–62; Flath, 2011 WL 6299941, at *7; United States v. Martinez, 599 F. Supp. 2d 784, 807–08 (W.D. Tex. 2009).

As to the final Morrison factor, the Court concludes there is a link between the prohibited conduct and its effect on foreign commerce, and that link is not so attenuated as to strip Congress of its authority to regulate the conduct in question. Sebastian argues that 18 U.S.C. § 2423(c), as applied here, fails to satisfy the fourth Morrison factor because his alleged conduct was non-economic, as "there was no exchange of goods, let alone a transaction that could impact commerce between the United States and Laos," and because it occurred wholly within Laos, it is the province of the Laotian government to regulate it. D. 90 at 13–14. Neither argument is persuasive. As an initial matter, the Court has already concluded that Sebastian's actions, as alleged, are economic and commercial in nature and involved the exchange of things of value. More fundamentally,

Sebastian's alleged conduct, in the aggregate, could affect foreign commerce and the international market in child trafficking and sex tourism.  For example, while the exchange of money was not involved, "if sufficient numbers of American customers enter the marketplace for sex with children [in exchange for shelter or other valuable items], their presence will effect an increase in price for illicit sexual activity with children.  Increased price, in turn, affects supply.  The trafficking of children both within individual countries and across international borders is likely to increase as the financial return on sex with children grows and remains lucrative; so, too, will the number of children who voluntarily enter the market, particularly in poorer countries."  Reed, 2017 U.S. Dist. LEXIS 118020, at *35.  Furthermore, the fact that Sebastian's alleged conduct occurred wholly in a foreign location does not affect Congress's authority to act.  See Raich, 545 U.S. at 26 (concluding that Congress could criminalize wholly intrastate possession of marijuana because prohibiting intrastate possession of a product for which there is an interstate market "is a rational (and commonly utilized) means of regulating commerce in that product").  Accordingly, each of the Morrison factors is satisfied as to Counts I–III.

While this is an issue of first impression in the First Circuit, this Court's conclusion mirrors the decisions of other courts that have addressed the issue.  Addressing Foreign Commerce Clause challenges to 18 U.S.C. § 2423(c)'s regulation of commercial conduct, court have concluded it to be constitutional, albeit applying different frameworks.  See, e.g., Bianchi, 386 F. App'x at 160–62; Clark, 435 F.3d at 1110–17; Reed, 2017 U.S. Dist. LEXIS 118020, at *30–37; United States v. Flath, 845 F. Supp. 2d 951, 954–57 (E.D. Wis. 2012); Flath, 2011 WL 6299941, at *6–8.  Other courts addressing Foreign Commerce Clause challenges to 18 U.S.C. § 2423(c)'s regulation of non-commercial conduct have also concluded it to be constitutional.  See, e.g., Park, 938 F.3d at 373–74; Lindsay, 931 F.3d at 860–63; Durham, 902 F.3d at 1192–217; Bollinger, 798 F.3d at 208–

19; Pendleton, 658 F.3d at 305–11; Bianchi, 386 F. App'x at 160–62; United States v. Hardeman, No. CR 10-0859-RS, 2011 WL 13143962, at *3–9 (N.D. Cal. July 20, 2011); Martinez, 599 F. Supp. 2d at 802–08. Further support stems from the principle that, when analyzing a statute's constitutionality, "[d]ue respect for the decisions of a coordinate branch of Government demands that [courts] invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bound." Morrison, 529 U.S. at 607 (citations omitted).

Sebastian offers two cases in support of his cause, neither of which compels a different outcome. First, he relies upon the Sixth Circuit's decision in United States v. Al-Maliki, in which a jury found the defendant guilty of violating 18 U.S.C. § 2423(c) after he sexually abused his two minor sons while abroad. Al-Maliki, 787 F.3d at 789–90. The defendant appealed his conviction and "argue[d] for the first time on appeal that § 2423(c) is unconstitutional because it exceeds Congress's authority under the Foreign Commerce Clause." Id. at 790. As an initial matter, the Sixth Circuit did not resolve the matter in the defendant's favor. Id. at 794 (stating that "we need not finally decide today. . . . "we conclude only that the statute is not *obviously* unconstitutional, al-Maliki's challenge flunks plain-error review" (italics in original)). In doing so, however, the Sixth Circuit noted that it was "lean[ing] toward" ruling that "enforcing § 2423(c) against al-Maliki for his noncommercial conduct while residing in Syria" was unconstitutional, because his actions did not involve the channels or instrumentalities of commerce, nor did the defendant's non-commercial conduct have a substantial effect on foreign commerce. Id. at 792–93. The court also expressed "skeptic[ism]" about the idea that Congress has broader power over foreign commerce than over its domestic counterpart. Id. at 793–94. While having considered the Sixth Circuit's analysis on the issue, the Court is not persuaded to reach a similar conclusion here. Importantly, Al-Maliki involved truly non-commercial conduct (involving the defendant's sexual abuse of his

own children), unlike the alleged conduct at issue here.  Indeed, the Sixth Circuit's analysis emphasized throughout the non-commercial nature of the defendant's conduct.  Id. at 792.[4]

Second, Sebastian relies upon United States v. Reed, where a district court adjudicated a motion to dismiss an indictment based upon a Foreign Commerce Clause challenge.  Reed, 2017 U.S. Dist. LEXIS 118020, at *1–2.  The indictment charged the defendant with one count of violating 18 U.S.C. § 2423(c) by traveling to the Philippines and exchanging money for sex with a minor child and a second count of violating § 2423(c) by residing in the Philippines and molesting and attempting to molest his own minor child.  Id. at *1.  As to the second count, the court determined that the defendant's conduct was non-commercial, "noneconomic, violent criminal conduct" and that "[n]one of the Lopez factors supports the conclusion that residing in a foreign country and molesting one's own child has a substantial effect on the international market for child trafficking and sex tourism."  Id. at *39–40.  Accordingly, the court held "that Section 2423(c), as applied to the conduct alleged in Count Two, is not a constitutional exercise of Congress' authority under the Foreign Commerce Clause."  Id. at *47.  This decision does not persuade the Court for the same reasons discussed above—namely, it involved non-commercial

---

[4] In his reply, Sebastian offers two additional arguments as to why Al-Maliki should control this case's outcome.  First, even though Al-Maliki failed on plain error review, the Sixth Circuit subsequently held in United States v. Rife, 33 F.4th 838 (6th Cir. 2022), that a defendant's conviction under 18 U.S.C. § 2423(c) for non-commercial sex acts was not an appropriate exercise of Congress's Foreign Commerce Clause powers.  Rife, 33 F.4th at 845.  This case does not control here, because not only did the Sixth Circuit ultimately uphold the conviction pursuant to Congress's Necessary and Proper Clause powers, but the court also explained at length that the conduct at issue "was itself in no way commercial."  Id. at 844, 848.  Second, Sebastian argues that Al-Maliki applied an originalist understanding of the Foreign Commerce clause, which should guide the Court here because, in Sebastian's view, the Supreme Court "has increasingly adopted an originalist view in recent years, and it may well do so when next considering a challenge based on the Foreign Commerce Clause."  D. 109 at 6.  Even accepting Sebastian's argument, however, Al-Maliki is not persuasive here because it involved non-commercial, and in both Al-Maliki and Rife, the Sixth Circuit highlighted the non-commercial nature of the defendants' actions.  See Rife, 33 F.4th at 844; Al-Maliki, 787 F.3d at 792.

conduct.  Moreover, following the court's decision in Reed, the D.C. Circuit subsequently held that the statute's "prohibition against U.S. citizens engaging in non-commercial child sex abuse abroad is also within Congress's foreign commerce power." Park, 938 F.3d at 373.  Additionally, in adjudicating the first count ("traveling in foreign commerce and paying a minor child for sex"), which involved commercial conduct, the Reed court concluded that the application of 18 U.S.C. § 2423(c) was a constitutional exercise of Congress's authority under the Foreign Commerce Clause. Reed, 2017 U.S. Dist. LEXIS 118020, at *36–37.

For all of these reasons, this Court concludes that, as applied to Counts I–III, 18 U.S.C. § 2423(c) is a constitutional exercise of Congress's authority pursuant to the Foreign Commerce Clause.

### 3. Constitutionality of Counts IV–VI

In Counts IV–VI, the government charges Sebastian with three counts of violating 18 U.S.C. § 1591(a)(1), which makes it criminal for an individual to "knowingly . . . in or affecting interstate or foreign commerce . . . recruit[], entice[], harbor[], transport[], provide[], obtain[], advertise[], maintain[], patronize[], or solicit[] by any means a person" while "knowing, or, . . . in reckless disregard of the fact, . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act."  18 U.S.C. § 1591(a)(1).  Counts IV–VI also charge violations of 18 U.S.C. § 1596, which provide courts with jurisdiction over violations of § 1591 committed by United States citizens, lawful permanent residents, or offenders present in the United States.  Id. § 1596(a)(1)–(2).  As applied to Sebastian's alleged conduct, 18 U.S.C. § 1591(a)(1) also satisfies each of the four Morrison factors.

The first factor—namely, whether "whether the statute regulates economic or commercial activity"—is satisfied here.  Morales-de Jesús, 372 F.3d at 10 (quoting Morrison, 529 U.S. at 610–

12).  Section 1591(a)(1) is part of the Trafficking Victims Protection Act ("TVPA"), which is in turn "part of a comprehensive regulatory scheme that criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain.  Congress recognized that human trafficking, particularly of women and children in the sex industry, 'is a modern form of slavery, and it is the largest manifestation of slavery today.'"  United States v. Walls, 784 F.3d 543, 548 (9th Cir. 2015) (quoting 22 U.S.C. § 7101(b)(1)).  Moreover, on this record, Sebastian's alleged conduct is economic and commercial in nature.  The second factor, or "jurisdictional hook," is also present here, because a would-be defendant's actions are only criminalized where they are "in or affecting interstate or foreign commerce."  18 U.S.C. § 1591(a)(1); see Hernández-Gotay v. United States, 985 F.3d 71, 79 (1st Cir. 2021) (stating that the text "in or affecting interstate or foreign commerce," as included in 7 U.S.C. § 2156(f)(1), was the "jurisdictional element" in an interstate commerce clause analysis); United States v. Shapiro, No. CR 15-224(B)-DMG, 2017 WL 11593373, at *2 (C.D. Cal. July 14, 2017) (explaining that "§ 1591 falls within Congress' foreign commerce power by requiring the criminal conduct to be 'in or affecting foreign commerce'").

Numerous congressional findings underscore the global nature of sex trafficking and the broader sex industry.  See, e.g., 22 U.S.C. § 7101(b)(2) (finding, among other things,  that "[t]he sex industry has rapidly expanded over the past several decades"); id. § (b)(21) (finding that "[t]rafficking of persons is an evil requiring concerted and vigorous action by countries of origin, transit or destination, and by international organizations"); id. § (b)(23) (finding that "[t]he United States and the international community agree that trafficking in persons involves grave violations of human rights and is a matter of pressing international concern"); id. § (b)(24) (finding that "[t]rafficking in persons is a transnational crime with national implications").  Notably, Congress

found that "[t]rafficking in persons substantially affects interstate and foreign commerce," id. § (b)(12), and some courts have concluded that this specific finding is rational, see Walls, 784 F.3d at 548 (citations omitted); United States v. Evans, 476 F.3d 1176, 1179 (11th Cir. 2007).

As to the fourth and final Morrison factor, the conduct 18 U.S.C. § 1591(a)(1) seeks to regulate is not so attenuated from foreign commerce and the international market in child trafficking and sex tourism as to place it beyond Congress's constitutional authority. This is true for the same reasons discussed above in regard to 18 U.S.C. § 2423(c). Even if money was not involved, Sebastian allegedly traded something of value—shelter—for various forms of sexual gratification. Indeed, several of Congress's findings highlighted that children and other victims are not always coerced into trafficking through the exchange of money. See, e.g., 22 U.S.C. § 7101(b)(2) (finding that "[m]any of these persons are trafficked into the international sex trade, often by force, fraud, or coercion"); id. § (b)(4) (finding that "[t]raffickers lure women and girls into their networks through false promises of decent working conditions at relatively good pay"); id. § (b)(6) (finding that "[v]ictims are often forced through physical violence to engage in sex acts or perform slavery-like labor" and "[s]uch force includes rape and other forms of sexual abuse, torture, starvation, imprisonment, threats, psychological abuse, and coercion"). As such, each of the Morrison factors is satisfied as to Counts IV–VI.

Courts that have considered Foreign Commerce Clause challenges to 18 U.S.C. § 1591(a)(1) have concluded that the statutory provision's application was within Congress's authority. In United States v. Baston, the Eleventh Circuit addressed a Foreign Commerce Clause challenge from a defendant convicted of 18 U.S.C. § 1591(a)(1) and § 1596(a)(2). Batson, 818 F.3d at 666. The court explained that "nothing in the Foreign Commerce Clause limits Congress's

authority to enact extraterritorial criminal laws." Id. at 667 (citations omitted).  Applying the

Interstate Commerce Clause framework, the court explained that:

> Section 1596(a)(2) is constitutional at the least as a regulation of activities that have
> a "substantial effect" on foreign commerce.   Section 1596(a)(2) gives
> extraterritorial effect to section 1591, the statute that defines the crime of sex
> trafficking by force, fraud, or coercion.  And Congress had a "rational basis" to
> conclude that such conduct—even when it occurs exclusively overseas—is "part of
> an economic 'class of activities' that have a substantial effect on . . . commerce"
> between the United States and other countries.

Id. at 668 (citing Raich, 545 U.S. at 17, 19).  In Shapiro, 2017 WL 11593373, at *1, a district court

adjudicated a defendant's motion to dismiss a count charging him with violating 18 U.S.C. § 1591,

because he argued the statutory provision was "unconstitutional in that it exceeds Congress's

authority under the foreign commerce clause." Id.  There, the court explained that:

> § 1591 expressly includes conduct, "in and affecting interstate and foreign
> commerce," and then goes on to describe the criminal conduct.  Such criminal
> conduct, therefore, by statutory definition, is required to be "in or affecting . . .
> foreign commerce," which the Supreme Court has held is Congress' regulation of
> its commerce power to the outer limits. . . . As such, the statute's use of the phrase,
> "in and affecting foreign commerce," defines the criminal conduct to be within
> Congress' foreign commerce power.

Id. (internal citation omitted).  Similarly, application of 18 U.S.C. § 1591 to Sebastian's alleged

conduct here is a legitimate exercise of Congress's Foreign Commerce Clause authority.

Ultimately, Sebastian's retort is that the Morrison factors are not satisfied here because

"alleged sex acts occurring exclusively within foreign territory have no effect on commerce."  D.

90 at 14.  The Court cannot agree for the reasons articulated above in relation to 18 U.S.C. §

2423(c).  This conclusion is further buttressed by the reasoning by other courts that have held that

Congress had a rational basis for concluding that sex trafficking in violation of 18 U.S.C. §

1591(a)(1) and § 1596(a)(2) "even when it occurs exclusively overseas." Batson, 818 F.3d at 668.

Moreover, in the context of domestic sex trafficking, courts have held that conduct occurring

wholly within one state "had the capacity when considered in the aggregate with similar conduct by others, to frustrate Congress's broader regulation of interstate and foreign economic activity." Evans, 476 F.3d at 1179; see Walls, 784 F.3d at 548.  The Supreme Court has similarly concluded that Congress has authority to regulate purely intrastate cultivation and possession of marijuana for personal use because the Interstate Commerce Clause power extends to "purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce."  Raich, 545 U.S. at 18 (citations and internal quotation marks omitted).

Accordingly, this Court concludes that, as applied to the conduct alleged in Counts IV–VI, 18 U.S.C. § 1591(a)(1) is a constitutional exercise of Congress's authority pursuant to the Foreign Commerce Clause.[5]

### C.    "Commercial Sex Act"

All six counts require the government to prove beyond a reasonable doubt that Sebastian engaged a minor in a "commercial sex act."  Sebastian argues that his alleged conduct is not a "commercial sex act," within the meaning of 18 U.S.C. § 1591.  D. 90 at 16–20.  Sebastian

---

[5] As the Court concludes that Congress has authority to regulate, pursuant to its foreign commerce powers, Sebastian's alleged conduct, it need not decide whether the other two alternative Lopez categories—channels and instrumentalities of commerce—apply to either 18 U.S.C. § 2243(c) or § 1591(a)(1).  See, e.g., Bollinger, 798 F.3d at 218 (expressing, but not explicitly deciding, that "this Circuit's clear precedent could provide a solid basis for upholding Section 2423(c) on the ground that it regulates the channels and instrumentalities of foreign commerce").  Likewise, the Court need not decide whether the enactment of either provision was a valid exercise of Congress's Necessary and Proper Clause power to implement the Optional Protocol to the Convention on the Rights of the Child on the Sale of Children, Child Prostitution and Child Pornography.  See, e.g., Lindsay, 931 F.3d at 863 (declining to address whether Congress's treaty power or inherent power over international affairs provided it authority to enact 18 U.S.C. § 2243(c), where the court determined the Foreign Commerce Clause supplied the requisite authority (citations omitted)); Bollinger, 798 F.3d at 208 n.3 (declining to address whether the Necessary and Proper Clause provided Congress authority to enact 18 U.S.C. § 2243(c), where the court the determined the Foreign Commerce Clause supplied the requisite authority).

contends that a reasonable interpretation of "commercial sex act" must involve "mutual genital contact or intercourse, or contact between the mouth and genitalia" as more broadly defined in 18 U.S.C. § 2246(2).  Id. at 17.  A review of the relevant statutory framework and application of the usual rules of statutory construction make clear that 18 U.S.C. § 1591's term "commercial sex act" encompasses Sebastian's alleged conduct of requiring minors masturbate him in exchange for value.

Section 2423(c) prohibits a United States citizen or lawful permanent resident from traveling in foreign commerce or residing in a foreign country and engaging in "any illicit sexual conduct" with another person.  18 U.S.C. § 2423(c).  As noted previously, "illicit sexual conduct" is defined in three ways under the statute, but only the first two are relevant here.  Section 2423 first defines "illicit sexual conduct" as "a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime and territorial jurisdiction of the United States."  Id. § 2423(f)(1).  Section 2246, in turn, defines a "sexual act" in four different ways:

> **(2)** the term "sexual act" means—
>
> > **(A)** contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
> > **(B)** contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;
> > **(C)** the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or
> > **(D)** the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person;

Id. § 2246(2)(A)–(D).  The government in its charging documents, however, relies upon § 2423(f)(2), which defines "illicit sexual conduct" as "any commercial sex act (as defined in §

1591) with a person under 18 years of age." Id. § 2423(f)(2).  For its part, 18 U.S.C. § 1591 defines the term "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." Id. § 1591(e)(3).  Because "any sex act" is not defined, Sebastian argues that the Court should import 18 U.S.C. § 2246(2)'s narrower definition of "sexual act." D. 90 at 18–20.  Accordingly, because Sebastian's alleged conduct is not covered by any of 18 U.S.C. § 2246(2)'s definitions of "sexual act," he contends that the charges against him are insufficient as a matter of law.  Id.

Where neither Congress nor the First Circuit have defined "any sex act," the Court applies the usual rules of statutory construction to discern its meaning.  The Court "begin[s] with the text itself." Penobscott Nation v. Frey, 3 F.4th 484, 490 (1st Cir. 2021) (citing cases).  This inquiry involves "determin[ing] whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." Id. (quoting Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002)) (internal quotation marks omitted).  If the text is ambiguous, legislative history and congressional intent are helpful resources in evaluating the text's meaning.  Id. at 491 (citing Carcieri v. Salazar, 555 U.S. 379, 392 (2009)).  As for undefined terms, courts "construe [them] in accordance with [their] ordinary meaning." Id. (quoting Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 553 (2014)) (internal quotation marks omitted).  "Dictionaries are useful aids in determining a word's ordinary meaning." Id. (citing cases).

Applying this rubric, the Court declines to import 18 U.S.C. § 2246(2)'s narrower definition of "sexual act," as inconsistent with the statute's text and ordinary meaning of "any sex act."  As an initial matter, the use of the word "any" demonstrates that Congress intended "sex act" to be interpreted broadly and include more than just the ultimate act of sex.  See United States v. Dion, 37 F.4th 31, 35 (1st Cir. 2022) (explaining that "[t]he word 'any,' in particular, 'has an

25

expansive meaning'" (quoting <u>Patel v. Garland</u>, 142 S. Ct. 1614, 1622 (2022))).  The word "any" also does not modify the term "sexual act" in either 18 U.S.C. § 2423(f)(1) or § 2246(2), further suggesting that Congress intended "any sex act" to be defined more broadly than "sexual act." Moreover, 18 U.S.C. § 2246(2) expressly states that the definitions contained therein apply only to Chapter 109A of Title 18, which does not include § 1591.  18 U.S.C. § 2246 (stating that these definitions apply to terms "[a]s used in this chapter").  Along these same lines, Congress chose not to cross-reference 18 U.S.C. § 2246(2) in § 1591.  <u>See</u> <u>United States v. Roberson</u>, 459 F.3d 39, 52 (1st Cir. 2006) (expressing that "[i]f Congress had intended the definition in § 802(44) to cross-reference the definition in § 802(13), it could have indicated such a cross-reference in the text of the *definition*" (italics in original)).

Dictionary definitions of "sex act" also do not support Sebastian's cause.  Merriam-Webster's dictionary defines "sex act" as "coitus" and "an act performed with another for sexual gratification."  Sex Act, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/sex%20act (last visited Feb. 21, 2023).  Massages, involving the masturbation of another person as alleged here, are "act[s] performed . . . for sexual gratification." <u>Id.</u>  Even the dictionary definition Sebastian himself offers does not exclude massages that include masturbation.  D. 90 at 19-20 (referencing Oxford English Dictionary definition).  According to the Oxford English Dictionary, a "sex act" is defined as a "sexual action or activity, especially the act of sexual intercourse."  Sex Act, Oxford English Dictionary, https://www.oed.com/view/Entry/176989?redirectedFrom=sex+act#eid23487111 (last visited Feb. 21, 2023).  While the word "especially" emphasizes that sexual intercourse is a "sex act," it does not limit the definition to only sexual intercourse.  In line with these definitions, and modified by the word "any," "sex act" plainly encompasses massages involving the masturbation of another.

Moreover, other courts have rejected the same arguments proffered by Sebastian. See, e.g., United States v. Taylor, 44 F.4th 779, 788–89 (8th Cir. 2022) (holding that "Congress's decision to use the modifier 'any' before the term 'sex act' indicates an intent to expand 'sex act' to include activities involving sexual gratification such as masturbation" and refusing "to restrict 'sex act' as used in 18 U.S.C. § 1591 (Chapter 77) by incorporating a definition set forth in 18 U.S.C. § 2246(2), which expressly limits its application to offenses in Chapter 109A" (citing cases)); United States v. Bazar, 747 F. App'x 454, 456–57 (9th Cir. 2018) (holding that "the 'ordinary' and 'natural' meaning of 'any sex act' includes happy-ending massages" and "reject[ing] [the defendant's] argument that [the court] should import the narrower definition of 'sexual act' from 18 U.S.C. § 2246(2) into section 1591(a)" (citations omitted)); Ardolf v. Weber, 332 F.R.D. 467, 478 (S.D.N.Y. 2019) (holding that "grabbing and fondling Plaintiff's genitals is a 'sex act' under § 1591" and refusing to "disregard the plain and ordinary definition of the term 'any sex act,' and instead use the definition of the term 'sexual act' in 18 U.S.C. § 2246(2)"); United States v. Tollefson, 367 F. Supp. 3d 865, 879 (E.D. Wis. 2019) (holding that "the ordinary meaning of sex act does not require physical contact; it includes masturbation"); Noble v. Weinstein, 335 F. Supp. 3d 504, 522–23 (S.D.N.Y. 2018) (explaining that "[b]ecause 18 U.S.C. § 2246's definition does not include the modifier 'any' before 'sex act,' nor the Congressional intent to enhance protection for victims . . . , it is rejected as contrary to and incompatible with Section 1591's plain language" and holding that forcing an individual to masturbate another "meets the statutory definition of 'any sex act' from Section 1591(e)(3)"). Sebastian urges the Court not to follow these courts' "non-binding authority and flawed reasoning." D. 90 at 19. He further argues that "nothing in section 1591 precludes application of the principles defined in section 2246." Id. The rules of statutory construction, however, prevent the Court from doing so, and Sebastian offers no persuasive

argument as to why the more appropriate course of action would be to interpret "any sex act" in accordance with a definition that Congress explicitly did not cross-reference.

For all these reasons, the government's allegations in its indictment are sufficient and Sebastian's motion does not warrant dismissal of the charges against him on this ground.

> ### D.  <u>Unconstitutionally Vague</u>

In the alternative, Sebastian argues that the term "sex act" is unconstitutionally vague because it does not place him on sufficient notice of the charge against him.  <u>Id.</u> at 20.  Specifically, he contends that this undefined term "leaves too much to the imagination and allows prosecution for a wide range of behaviors."  <u>Id.</u>

"A statute is impermissibly vague if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'"  <u>Frese v. Formella</u>, 53 F.4th 1, 6 (1st Cir. 2022) (quoting <u>United States v. Williams</u>, 553 U.S. 285, 304 (2008)).  To give fair notice, a statute "need not map out what is prohibited with 'meticulous specificity.'"  <u>Id.</u> at 11 (quoting <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 110 (1972)).  Rather, "[i]t must only 'delineate[] its reach in words of common understanding.'"  <u>Id.</u> (second alteration in original) (quoting <u>Grayned</u>, 408 U.S. at 112).  On the other hand, "[a] statute authorizes an impermissible degree of enforcement discretion -- and is therefore void for vagueness --where it fails to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent arbitrary and discriminatory enforcement."  <u>Id.</u> at 7 (citation and internal quotation marks omitted).  Additionally, void-for-vagueness challenges are evaluated on an as-applied basis.  <u>See</u> <u>United States v. Zhen Zhou Wu</u>, 711 F.3d 1, 15 (1st Cir. 2013) (explaining that "[o]utside the First Amendment context, we consider 'whether a statute is

vague as applied to the particular facts at issue'" (emphasis omitted) (quoting <u>Holder v. Humanitarian L. Project</u>, 561 U.S. 1, 18–19, (2010))).

The Court concludes that the term "sex act" provides sufficiently clear notice and sufficiently adequate guidelines for law enforcement and triers of fact, thus passing constitutional muster. "Sex act" uses words of ordinary understanding and, as discussed above, encompasses not just sexual intercourse, but also actions taken for sexual gratification. The Supreme Court has made clear that a term or statute is not vague where it "requires a person to conform his conduct to an imprecise but comprehensible normative standard;" rather, it is vague where "no standard of conduct is specified at all." <u>Coates v. Cincinnati</u>, 402 U.S. 611, 614 (1971). That is, "[t]he mere fact that a statute or regulation requires interpretation does not render it unconstitutionally vague." <u>United States v. Lachman</u>, 387 F.3d 42, 56 (1st Cir. 2004).

Sebastian's vagueness challenge must fail because such challenge is reviewed as applied to him, and his alleged conduct falls within the conduct proscribed by the statutes. <u>See</u> <u>Hoffman Ests. v. Flipside, Hoffman Ests.</u>, 455 U.S. 489, 495 (1982) (stating that "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others"). As detailed above, courts have consistently ruled that acts involving masturbation fall within the ambit of "sex act." Moreover, persons of ordinary intelligence would consider masturbation a "sex act" and because vagueness challenges are reviewed on an as-applied basis, Sebastian's hypothetical examples of explicit modeling or acting, D. 90 at 20, do not make the term unconstitutionally vague. <u>See</u> <u>United States v. Chin</u>, 15 F.4th 536, 547 (1st Cir. 2021) (citation omitted); <u>United States v. Cook</u>, 970 F.3d 866, 873 (7th Cir. 2020). Accordingly, Sebastian's vagueness challenge fails.

**VI.     Conclusion**

For all the foregoing reasons, Sebastian's motion to dismiss, D. 90, is DENIED.

**So Ordered.**

/s/ Denise J. Casper
U.S. District Judge
